IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRIS,<br><br>    Plaintiff,<br><br>  v.<br><br>D.A. MCCOSKER CONTRUCTION CO.,<br><br>    Defendant.<br>_____ / | No. C 11-05339 CRB<br><br>**ORDER DENYING MOTION TO REMAND** |

     Plaintiff Harris brought suit in state court for breach of contract, and Defendant McCosker removed the action on the basis of federal question jurisdiction as established by section 301 of the Labor Management Relations Act ("LMRA").  Def.'s Answer (dkt. 1) at 8; Def.'s Notice of Removal (dkt. 1) ¶ 6.  Plaintiff alleges that Defendant breached an independent oral contract that established rights independent from the Collective Bargaining Agreement ("CBA"), Compl. (dkt. 1) ¶ 4-5, and moves to remand the case back to state court.  Mot. (dkt. 11) at 1.  Plaintiff's Motion is DENIED because the CBA conflicts with the supplementary oral contract, and remanding the action to state court would force that court to interpret the CBA, in contravention of congressional intent.  See Opp'n (dkt. 13) at 3; McCosker Decl. (dkt. 14), Ex. A at 59; see also Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 202-03 (1985).

## I. BACKGROUND

Plaintiff worked for Defendant for 26 years. Compl. ¶ 4. Plaintiff's work and compensation was governed in part by a CBA. Id. Plaintiff alleges that he and Defendant's president, Brian McCosker, acting on behalf of Defendant, entered into an oral agreement regarding Plaintiff's compensation. Id. ¶ 5. This alleged agreement sets out pay provisions in addition to those in the CBA. Id. Further, it outlines the Defendant's obligation to report hours to the Union in order to activate certain benefits delineated in the CBA. Id. Finally, the alleged agreement sets out a new duty not contained in the CBA for Plaintiff to be "on call" from January 2011 until May 2014. Id.

Plaintiff brings suit for breach of contract under two theories. First, Plaintiff alleges that Defendant failed to pay Plaintiff the full amount due under the oral agreement. Id. ¶ 8. Second, Plaintiff alleges that Defendant failed to report the number of hours to the Union as agreed upon in the oral agreement, which resulted in a reduction of pension benefits under the CBA. Id. ¶ 9. Defendant removed the action, and asserts that this Court has federal question jurisdiction because of complete preemption. Def.'s Answer at 8. Plaintiff now moves to remand. Mot. at 1.

## II. LEGAL STANDARD

As a general matter, a plaintiff can avoid federal court by pleading state law claims, and federal preemption may be raised as a defense in a state court action but not as a basis for original jurisdiction in federal court. See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987); Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003). The distinction between traditional and complete preemption is important, because only complete preemption can establish jurisdiction here, where the plaintiff's complaint alleges state law claims between non-diverse parties. Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009).

Complete preemption exists where "[(1)] the federal statute[] at issue provides the exclusive cause of action for the claim asserted and [(2) the federal statute] also set[s] forth procedures and remedies governing that cause of action." Id. at 6. The Supreme Court has

only found complete preemption three times: (1) usury claims under the National Bank Act; (2) claims for employee benefits under ERISA; and (3) claims for breach of a CBA subject to the LMRA. Id. at 8 (citations omitted).

Section 301 of the LMRA establishes federal jurisdiction for "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). The LMRA therefore preempts any state cause of action for breach of a CBA. See Jimeno v. Mobil Oil Corp., 66 F.3d 1514, 1522 (9th Cir. 1995). "Despite the breadth of § 301 complete preemption, not every claim which requires a court to refer to the language of a labor-management agreement is necessarily preempted." Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1108 (9th Cir. 2000) (internal quotation marks and citation omitted). Rather, federal preemption is mandated only if the application of state law requires *interpretation* of a CBA. See Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 413 (1998) (emphasis added). The term "interpret," within the context of section 301 complete preemption, requires more than merely looking at, considering, referring to, or applying the terms of the agreement. See Balcorta, 208 F.3d at 1108. It is the "legal character of a claim, as 'independent' of rights under the collective-bargaining agreement, (and not whether a grievance arising from 'precisely the same set of facts' could be pursued), that decides whether a state cause of action may go forward." Livadas v. Bradshaw, 512 U.S. 107, 123-24 (1994). Finally, when the meaning of the CBA is not the subject of dispute, the bare fact that such an agreement will be consulted in the course of state-law litigation does not require the claim to be extinguished. Id. at 124. For example, a collective-bargaining agreement may "contain information such as rate of pay . . . that might be helpful in determining . . . damages." Id. (quoting Lingle, 480 U.S. at 413, n.12).[1]

---

[1] Defendant relies on Chmiel v. Beverly Wilshire Hotel, 873 F.2d 1283 (9th Cir. 1989) which applied a categorical approach to complete preemption when a party to a CBA alleges independent contractual rights. Opp'n at 11; see also Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 997 (9th Cir. 1987). This Court has previously rejected such an approach in Boccignone, 2008 WL 786908. In Boccignone, this Court held that only those contract claims that directly contradict terms of the CBA, or require interpretation of the CBA, would trigger complete preemption. Id. at *2.

3

As recently as 2008, this Court discussed complete preemption and CBAs in Boccignone v. Sutter Healthcare, No. C 07-06243 CRB, 2008 WL 786908 (N.D. Cal. March 20, 2008). There, this Court held that a person subject to a CBA in her employment could sue on an independent promise to repay college loans without triggering complete preemption. Id. at *2. In reaching that holding, this Court considered the fact that there was no evidence that the independent promise was negotiated between the union and the employer. Id.

## III. DISCUSSION

The only basis for retention of this case and continuing federal jurisdiction is the "complete preemption" exception to the well pleaded complaint rule. Defendant has shown a direct conflict between the terms of the two contracts, and also that a court would need to interpret a term of the CBA. Thus, the complete preemption exception has been satisfied.

### A. The "Complete Preemption" Exception

Defendant argues several different bases for applying complete preemption. Opp'n at 3-14. Only section 03.04 of the CBA succeeds in creating a conflict between the two agreements. Id. at 3.[2][3] Plaintiff argues that the doctrine should not apply because the independent contract covers managerial tasks, but does not allege any facts to support that argument. Reply (dkt. 16) at 2.

---

[2] Defendant also argues that reference to the CBA for damage calculation (amount of pension benefits, extra salary) purposes would trigger complete preemption. The Court disagrees. In Lingle, 486 U.S. at 413, the Supreme Court addressed the question of reference to a CBA for damage calculation in dicta. There, the Court stated, "Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state-law claim, not otherwise pre-empted, would stand." Id. at 413 n.12.

[3] Defendant also argues that Plaintiff had access to union grievance procedures under his CBA, and thus his state law contract allegations are preempted. Opp'n at 10. In support of this argument, Defendant cites Price v. Georgia-Pac. Corp., 99 F. Supp. 2d 1162, 1165 (N.D. Cal. 2000). There, this Court had a clearer factual record than the one here. There, the plaintiff attempted to bring a grievance procedure before suing in state court. Id. at 1165. By taking such an action, the Plaintiff in Price established that grievance procedures were unavailable to him. Here, it is uncontested that Plaintiff, as a member of the union, would have access to grievance procedures under the CBA. Compl ¶ 5. However, it is not clear whether Plaintiff's alleged rights would be cognizable under grievance procedures. McCosker Decl. Ex. A at 59. The Court does not rule on this basis.

### 1. Section 03.04.01 of the CBA

Defendant correctly argues that Plaintiff lacked the ability to enter into a binding contract because section 03.04.01 of the CBA controls further contracts between the parties. Opp'n at 3. Specifically, section 03.04.01 of the CBA bars "oral or written agreement[s] which conflict or [are] inconsistent with this Agreement, or any supplemental Agreements . . ." McCosker Decl., Ex. A at 22. Supplemental is a problematic term for Plaintiff, who asserts that there is an individual oral contract awarding him <u>additional</u> payment and flexibility outside the CBA. See Compl. ¶ 4-5. The alleged oral contract probably supplements the CBA. Even if it does not, a court's decision on the meaning of "supplemental" interprets the reach of section 03.04.01, and thus interprets a clause of the CBA.

One countervailing argument is worth noting. That is, the policy interest justifying section 301 preemption is not strongly present on these facts. The Supreme Court stated in <u>Lueck</u>, "[t]he interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation." <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 211 (1985). Remand to state court would harm these interests, because a California trial court would be forced to interpret the reach of the term "supplemental" in section 03.04.01 of the Plaintiff's CBA. To be sure, this kind of interpretation is less involved than the interpretation required by bad faith tort actions, where a party's conduct must be compared to the contract generally. See, e.g., <u>Lueck</u>, 471 U.S. at 216; <u>Int'l Broth. of Elec. Workers, AFL-CIO v. Hechler</u>, 481 U.S. 851, 862 (1987). In those cases, a state court could effectively rewrite the law applying CBAs by defining good faith. <u>Id.</u> But, on balance, the conflict between section 03.04.01 and the existence of an independent oral contract triggers the complete preemption doctrine, because "for the plaintiff to prevail the terms of the [CBA] would have to be ignored." <u>Boccignone</u>, 2008 WL 786908, at *2.

Another policy goal at issue here is the risk that remand would harm the "central role of arbitration in our . . . government." Lueck, 471 U.S. at 219. By carefully avoiding the CBA in his complaint, Plaintiff might be able to resolve contractual claims in state court, rather than before an arbitrator. However, this risk is lessened by the fact that Plaintiff is bringing suit on a separate contract that does not discuss arbitration at all. Reply Decl., Ex. 1 at 4.

On remand, a state court would be forced to interpret section 03.04.01 of the CBA. Although this is arguably a minor example of interpretation, it would still run counter to one of the main purposes of complete preemption, preventing such state-by-state interpretation of CBAs. See Lueck, 471 U.S. at 216; Hechler, 481 U.S. at 858.

### 2. Plaintiff's Allegations Regarding the Managerial Nature of his Tasks Do Not Dictate a Different Result

Plaintiff argued at the motion hearing that his independent contract covered only managerial tasks, and therefore falls outside the CBA. In Caterpillar, 482 U.S. at 394-395, an employer promised a management-level employee that he would not be demoted. Further, it was uncontested that the plaintiff's management-level position was not covered by the CBA. Id. at 388. The Court held that this independent promise did not require substantial interpretation of the CBA, and thus complete preemption was not triggered. Id. at 398. Here, however, it is uncontested that Plaintiff was covered by the CBA at all relevant times. See Compl. ¶4. Plaintiff argues that part of his work was covered by the CBA and part was managerial and outside of the CBA's terms. Id. Plaintiff does not specifically allege facts that show such a coverage limit in the CBA, or what managerial tasks Plaintiff actually performed. Nevertheless, even if such a limit existed in the CBA, a court would have to interpret that term to determine if Plaintiff fell within it. Thus, whether or not the task-based separation actually exists, Plaintiff's claim is completely preempted.[4]

---

[4] Plaintiff also argued at the motion hearing that his claim should not be preempted because, "if it is, then all personal injury cases involving union members would be preempted as well." The Court disagrees. The Ninth Circuit addressed this specific question in Burnside v. Kiewit Pac. Corp., 591 F.3d 1053, 1059 (9th Cir. 2007). There, the court distinguished between claims founded on nonnegotiable state law rights and claims founded on negotiated instruments, holding that claims founded on

**B.     Attorneys' Fees**

Attorneys' fees should not be awarded in a case where both parties have reasonable arguments regarding remand and preemption. Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005) (affirming denial of attorneys' fees because the defendant had an objectively reasonable basis for removing the case, although it was a close question). Here, both parties had reasonable arguments, and so Plaintiff's request for attorneys' fees is denied.

**IT IS SO ORDERED.**

Dated: January 30, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

nonnegotiable state law rights were not preempted. Id. Here, Plaintiff's alleged rights are founded on a negotiated oral contract with the Defendant, not one created by state law. Compl. ¶ 5.